UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-24524-CIV-SEITZ/SIMONTON

JOHN V. FURRY,

    Plaintiff,

v.

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND CLOSING CASE

THIS CAUSE is before the Court on the Miccosukee Tribe's[1] Motion to Dismiss Plaintiff's Complaint [DE-17]. Plaintiff brings this action as Personal Representative of the Estate of Tatiana Furry, who died in a car crash after being sold substantial amounts of alcohol on Tribal property on multiple occasions such that Defendants knew that she was habitually addicted to alcohol.[2] Plaintiff's eight count Complaint alleges: (1) a violation of 18 U.S.C. § 1161 against all Defendants, except the Miccosukee Police Department; (2) a violation of Florida Statute § 768.125 (Florida's Dram Shop Act) against all Defendants, except the Miccosukee Police Department; (3) negligence against all Defendants, except the Miccosukee Police Department; (4) negligence against the Miccosukee Police Department for its investigation of the accident; (5) negligent hiring and retention against all Defendants; (6) negligent training and

---

[1] While titled the "Miccosukee Tribe's Motion," the Motion is brought on behalf of all Defendants and Plaintiff does not assert that the other Defendants should be considered separately for purposes of this Motion.

[2] Plaintiff filed a similar action is state court prior to filing this action. However, Defendants would not accept service of process in the state court action. Subsequently, Plaintiff filed this action.

supervision against all Defendants; (7) punitive damages; and (8) declaratory relief under 28 U.S.C. § 2201, *et seq*. Defendants seek to dismiss the Complaint based on tribal sovereign immunity. Because Defendants' sovereign immunity has not be waived, by Congress or by Defendants, Plaintiff's claims are barred by sovereign immunity and Defendants' Motion to Dismiss must be granted.

## I. Facts Alleged in the Complaint

Defendants own and operate the Miccosukee Resort & Gaming, a facility for gambling and a resort located in Miami-Dade County. As part of the Miccosukee Resort & Gaming, Defendants also own several bars and restaurants which sell or serve alcoholic beverages and which are part of the Miccosukee Resort & Gaming. On the night of January 20-21, 2009, Tatiana Furry was at the Miccosukee Resort & Gaming. Defendants furnished Tatiana with a substantial amount of alcoholic beverages, which she consumed on Defendants' premises. Defendants furnished the alcohol despite knowing that Tatiana was habitually addicted to alcoholic beverages. Defendants witnessed an obviously intoxicated Tatiana get in her car and leave the premises. Shortly after leaving the Miccosukee Resort & Gaming and Tribal property, Tatiana was involved in a head-on collision with another vehicle. Tatiana was killed as a result of the collision.

Pursuant to 18 U.S.C. § 1161, Defendants applied for and became licensed to sell and furnish alcohol by the State of Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages & Tobacco.[3] Section 1161 states:

---

[3]Plaintiff has filed a copy of the liquor license issued by Florida and Defendants' application affidavit, and a blank application form. Both the Defendants' executed affidavit and the application form contain language stating that "the place of business, if licensed, may be

> The provisions of sections 1154, 1156, 3113, 3488, and 3669,[4] of this title, shall not apply within any area that is not Indian country, nor to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register.

18 U.S.C. § 1161. As a result of section 1161, Plaintiff asserts that Defendants have waived their sovereign immunity and agreed to be governed by Florida law regulating the sale and furnishing of alcoholic beverages. Plaintiff alleges jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 2201, 18 U.S.C. § 1161, and 25 U.S.C. § 2701 and that the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

## II. Analysis

Defendants seek to dismiss Plaintiff's claims because (1) tribal sovereign immunity bars suit in federal court; (2) the Court lacks jurisdiction because there is no diversity or federal question jurisdiction; and (3) the Complaint fails to state a cause of action under 28 U.S.C. § 1161. Plaintiff asserts that tribal sovereign immunity does not apply because there is no tradition of tribal sovereign immunity regarding liquor regulation and because Defendants' liquor transactions have a substantial impact beyond tribal property. Because neither Congress nor Defendants have waived Defendants' sovereign immunity, Plaintiff's suit must be dismissed.

"As a matter of federal law, an Indian tribe is subject to suit only if Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v.*

---

inspected and searched during business hours or at any time business is being conducted on the premises without a search warrant by officers of the Division of Alcoholic Beverages and Tobacco, the Sheriff, his Deputies, and Police Officers for the purposes of determining compliance with the beverage and retail tobacco laws."

[4]These sections deal with prohibition in Indian country.

*Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). Because tribal immunity is a matter of federal law, it is not subject to diminution by the States. *Id.* at 756. Tribal sovereign immunity protects an Indian tribe from suit regardless of whether the suit arises from the tribe's governmental activities or its commercial activities. *Id.* at 754-55. A Congressional abrogation of tribal immunity occurs "only where the definitive language of the statute itself states an intent either to abolish Indian tribes' common law immunity or to subject tribes to suit under the act." *Florida v. Seminole Tribe of Florida*, 181 F.3d 1237, 1241-42 (11th Cir. 1999) (citation omitted). Furthermore, Congress may abrogate a tribe's sovereign immunity "only by using statutory language that makes its intention unmistakably clear and . . . any ambiguities in federal laws implicating Indian rights must be resolved in the Indian's favor." *Id.* at 1242. Similarly, a tribe's waiver of its sovereign immunity must be unequivocally expressed; a waiver will not be implied based on tribal actions. *Id.* at 1243.

The Eleventh Circuit has strictly applied these principles when determining whether sovereign immunity has been abrogated or waived. In *Seminole,* the Eleventh Circuit held that the state of Florida could not sue the Seminole Tribe for conducting unauthorized gaming operations in violation of the Indian Gaming Regulatory Act (IGRA) and state law.[5] Florida had argued that Congress had abrogated sovereign immunity from suits brought by states that seek relief for tribal violations of the IGRA and that by electing to engage in gaming under the IGRA the Seminole Tribe had waived its immunity. *Id.* at 1241. The IGRA expressly permitted suit by a state to enjoin gaming activity conducted in violation of a Tribal-State compact. *Id.* at 1242.

---

[5]Plaintiff argues that the *Seminole* case has been distinguished and that the statute was too narrowly read. However, the cases Plaintiff relies on are not from the Eleventh Circuit. This Court must follow Eleventh Circuit case law, unlike the district courts Plaintiff cites.

The Eleventh Circuit held that because there was no Tribal-State gaming compact between Florida and the Seminole Tribe, the statutory waiver did not apply, even though the gaming violated the IGRA. *Id.* The Court further held that the Seminole Tribe had not waived its sovereign immunity by choosing to engage in gaming under the IGRA because its actions did not constitute an express, unequivocal waiver. *Id.* at 1243. In *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1289 (11th Cir. 2001), the Eleventh Circuit held that when the Seminole Tribe signed contracts for federal financial assistance, in which the Tribe agreed not to discriminate in violation of federal law, the Tribe did not waive its sovereign immunity or consent to be sued in federal court on the specific claim brought by the plaintiff for discrimination in violation of the federal Rehabilitation Act. The *Sanderlin* Court also held that Congress had not generally abrogated tribal sovereign immunity in the Rehabilitation Act when it made "an agency of . . . an Indian tribe . . .which has an agreement with the designated State agency to conduct a vocational rehabilitation program" subject to the Act. *Id.* at 1290.

    A.    *Congress Has Not Abrogated Sovereign Immunity to Permit Private Tort Suits Arising From Violations of State Liquor Laws*

Plaintiff argues that when read in conjunction, 18 U.S.C. § 1161 and *Rice v. Rehner*, 463 U.S. 713 (1983) establish that there is no tribal sovereign immunity to private suits arising out of violations of state liquor laws. Plaintiff's argument overlooks a few steps in the analysis. The Supreme Court addressed § 1161 in *Rehner*. However, the issue in *Rehner* was whether a federally licensed Indian trader was exempt from California's state liquor licensing requirements, not whether an individual could bring a private suit against an Indian tribe for violation of a state law. The Supreme Court looked at the history of sovereign immunity and liquor regulation in

5

Indian country and found that there is no history of sovereign immunity in the area of liquor regulation. *Id.* at 722. Instead, history establishes a tradition of concurrent state and federal jurisdiction over the use and distribution of alcoholic beverages in Indian country. *Id.* at 724. Further, the Court found that states have "an unquestionable interest in the liquor traffic that occurs within [their] borders." *Id.* Thus, the Court concluded that, under § 1161, "Congress has delegated authority to the States as well as Indian tribes to regulate the use and distribution of alcoholic beverages in Indian country." *Id.* at 715. Consequently, the Supreme Court held that application of California's licensing requirements did not "impair a right granted or reserved by federal law." *Id.* at 734.

Thus, *Rehner* addressed the narrow issue of whether an Indian trader had to comply with state liquor licensing requirements. It did not address the issue before this Court – whether § 1161 has abrogated tribal sovereign immunity to permit private tort suits arising from the sale of liquor to individuals. Because of the narrow issue resolved in *Rehner,* its guidance is limited in resolving the issue before the Court. Nothing in *Rehner* suggests that § 1161 should be read to have abrogated tribal sovereign immunity to private lawsuits arising from violations of state dram shop laws.

While neither the Supreme Court nor any federal Circuit Courts appear to have addressed the exact issue before this Court – whether § 1161 constitutes an abrogation of tribal sovereign immunity for purposes of individual suits against tribes for injuries resulting from the violation of state alcohol laws – several state courts have. In *Filer v. Tohono O'Odham Nation Gaming Enterprise*, 129 P.3d 78, 83 (Ariz. Ct. App. 2006), the Arizona Court of Appeals, noting that a "Congressional waiver of tribal immunity must be unequivocal and explicit," found that § 1161

"does not even mention tribal immunity, much less waive it for private dram shop actions." Similarly, in *Foxworthy v. Puyallup Tribe of Indians Association*, 169 P.3d 53, 57 (Wash. Ct. App. 2007), the Court of Appeals of Washington held that *Rehner* limited § 1161's "waiver of sovereign immunity to the states' regulation of alcohol licensing and distribution" and its narrow holding "does not apply here to establish waiver of tribal sovereign immunity from private tort lawsuits . . . based on Dram Shop Act violations." Likewise, the Court of Appeals of Texas, in *Holguin v. Ysleta Del Sur Pueblo*, 954 S.W.2d 843, 845, 854 (Tex. Ct. App. 1997), held that tribal sovereign immunity protects Indian tribes from private suits for personal injuries resulting from non-compliance with the Texas Dram Shop Act because private causes of action do not constitute "enforcement" of an alcohol related law that falls within the waiver of tribal immunity set out in *Rehner*.

*Filer* and *Foxworthy* applied the same principles for determining whether tribal sovereign immunity has been abrogated that the Supreme Court used in *Kiowa* and the Eleventh Circuit set out in *Seminole* and *Sanderlin*. Applying those principles here, there is nothing in § 1161 that indicates that Congress intended to abrogate tribal sovereign immunity to allow suits by individuals injured as a result of a tribe's sale or distribution of alcohol to the public. While the statute requires that alcohol transactions be in "conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe," the statute does not expressly provide for any remedies, by a state or individual, if such transactions are not in conformity with state laws. Thus, nothing in § 1161's language definitively indicates "an intent either to abolish Indian tribes' common law immunity or to subject tribes to suit under the act." *Seminole*, 181 F.3d at 1242. Moreover, the Supreme Court has noted that "[t]here is a

difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa*, 523 U.S. at 755 (citing to *Oklahoma Tax Commission v. Citizen Band Potwatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 514 (1991), in which the Court found that while Oklahoma may tax cigarette sales by a Tribe's store to nonmemebers, the Tribe had immunity from suit to collect any unpaid state taxes). *See also Squaxin Island Tribe v. State of Washington*, 781 F.2d 715 (9th Cir. 1986) (holding that state had right to regulate and tax tribal liquor sales to non-Indians but that tribe was immune from suit by state to collect taxes due). Thus, while § 1161 requires compliance with State law, it does not expressly provide a means to enforce State law.

Plaintiff urges the Court to follow *Bittle v. Bahe*, 192 P.3d 810 (Okla. 2008), in which the Oklahoma Supreme Court found that § 1161 abrogated any tribal sovereign immunity from suit in the area of alcoholic beverage laws, including private tort suits. *Bittle,* reading *Rehner* broadly, found that Indians did not have the inherent attributes of sovereignty to regulate in the area of alcoholic beverages and that it is only such sovereignty that gives rise to immunity from private suit. *Id.* at 819. The *Bittle* court further found that the "words 'laws of the State' in § 1161 are comprehensive and under *Rice v. Rehner*, include state authority over alcoholic beverages whether it is legislative, executive, or adjudicative in nature." *Id.* at 823. Thus, the Oklahoma court found that an individual could maintain a negligence action against an Indian-owned dram shop. *Id.*

The *Bittle* court's broad reading of *Rehner* and § 1161, however, does not comport with the principles set out above, requiring that a Congressional abrogation of tribal immunity must use definitive language in the statute to state "an intent either to abolish Indian tribes' common

8

law immunity or to subject tribes to suit under the act." *Seminole*, 181 F.3d at 1242. Nor does it comport with the principle that any abrogation of immunity must be clear and unequivocal. *Id.* at 1242-43. Consequently, this Court cannot adopt the reasoning in *Bittle*.

Plaintiff also relies on 25 U.S.C. § 1747(b)(2) and Florida Statute § 285.16(2) to support his arguments that Defendants do not have tribal sovereign immunity from this suit. Section 1747(b)(2) states:

> The laws of Florida relating to alcoholic beverages (chapters 561, 562, 563, 564, and 565, Florida Statutes) . . . shall have the same force and effect within said transferred lands as they have elsewhere within the State and the State shall have jurisdiction over offenses committed by or against Indians under said laws to the same extent the State has jurisdiction over said offenses committed elsewhere within the State.

Plaintiff argues that § 1747 demonstrates the importance Congress places on applying Florida's liquor laws on Miccosukee land. Plaintiff notes that this statute is lacking any mention of "immunity." However, Plaintiff has it backwards. Under the principles set out above, a statute need not mention "immunity" in order to preserve it; instead, a statute must clearly set out that it is waiving immunity. Section 1747(b)(2) contains no such statement of waiver. Plaintiff's reliance on Florida Statute § 285.16(2) is also misplaced. Section 285.16(2) states: "The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state." However, Florida cannot waive tribal sovereign immunity; only Congress or the tribe itself can do that. *See Kiowa*, 523 U.S. at 756; *Miccosukee Tribe of Indians v. Napoleoni*, 890 So. 2d 1152, 1153 (Fla. 1st DCA 2004). Furthermore, the Florida Supreme Court has interpreted § 285.16 to give Florida courts jurisdiction over suits between Indians and other persons but not over a suit by other persons against a tribe. *Houghtaling v. Seminole Tribe of Florida*, 611 So. 2d 1235, 1238 (Fla. 1993).

Thus, § 285.16 provides no support for Plaintiff's arguments.

Finally, Plaintiff also argues that he should be permitted to discover the nature of Defendants' casino activities in order to determine whether sovereign immunity applies because there is a "general reluctance to extend immunity to tribal business enterprises." However, Plaintiff has provided no binding authority to support this proposition. Furthermore, as noted above, the Supreme Court has stated that "Tribal sovereign immunity protects an Indian tribe from suit regardless of whether the suit arises from the Tribe's governmental activities or its commercial activities." *Kiowa*, 523 U.S. at 754-55.

While the Supreme Court has noted that tribal sovereign immunity is "founded upon an anachronistic fiction" and has questioned the wisdom of continuing to extend it to off-reservation commercial activities, it has deferred to Congress to draw any such limitations. *Kiowa*, 523 U.S. at 758 (citation omitted). In questioning the wisdom of the doctrine's continued broad application the Supreme Court has said that in today's interdependent economies, "immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims." *Id.* Such would appear to be the case presently before this Court. However, thus far, Congress has not abrogated tribal sovereign immunity to permit private lawsuits arising from violations of state dram shop acts.

    2.    *Defendants Have Not Waived Their Sovereign Immunity*

As an alternative to statutory abrogation of sovereign immunity, Plaintiff asserts that Defendants waived their sovereign immunity by applying and paying for their Florida liquor licenses. Plaintiff argues that by executing the affidavit attached to the license Defendants

waived their sovereign immunity because they agreed to be bound by Florida law. The only language to this effect in both the affidavit and application is language which states: "the place of business, if licensed, may be inspected and searched during business hours or at any time business is being conducted on the premises without a search warrant by officers of the Division of Alcoholic Beverages and Tobacco, the Sheriff, his Deputies, and Police Officers for the purposes of determining compliance with the beverage and retail tobacco laws." Under Eleventh Circuit law, a tribe's waiver of its sovereign immunity must be unequivocally expressed; a waiver will not be implied based on tribal actions. *Seminole*, 181 F.3d at 1243. Nothing in the language of the affidavit and application constitutes an unequivocal, express waiver of sovereign immunity. First, contrary to Plaintiff's assertion, neither the application nor the affidavit contain a broad agreement to be bound by Florida law. Second, the language quoted does not address private suits by individuals. Thus, nothing in this language even implies a waiver of tribal immunity, let alone equivocally expresses a waiver. Moreover, the Eleventh Circuit expressly rejected such an argument in *Seminole*, when it held that the Seminole Tribe had not waived its sovereign immunity by electing to engage in gaming subject to regulation under the IGRA. *Id.* at 1242-43. Consequently, Defendants have not waived their sovereign immunity, either expressly or through their actions.

Accordingly, it is hereby

ORDERED that:

1. The Miccosukee Tribe's Motion to Dismiss Plaintiff's Complaint [DE-17] is GRANTED.

2. All pending motions not otherwise ruled upon are DENIED as moot.

3. This case is CLOSED.

DONE and ORDERED in Miami, Florida, this 13$^{R}$ day of July, 2011.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record